Jevan V. **WHITEHEAD**, Appellant,

v.

Jesse **BROWN**, Secretary of Veterans Affairs, Appellee.

No. 91–1473.

United States Court of Veterans Appeals.

March 10, 1993.

Before STEINBERG, Associate Judge.

## MEMORANDUM DECISION

STEINBERG, Associate Judge:

The appellant, Vietnam-era veteran Jevan V. Whitehead, appeals from a July 19, 1991, decision of the Board of Veterans' Appeals (BVA or Board) denying revision, on the basis of "clear and unmistakable error" under 38 C.F.R. § 3.105(a) (1992), of a 1979 Veterans' Administration (now Department of Veterans Affairs) (VA) regional office (RO) decision severing service connection for schizophrenia. *Jevan V. Whitehead,* BVA 91–30010 (July 19, 1991). While this case was on appeal, the case of *Russell v. Principi,* 3 Vet.App. 310 (1992) (consolidated with *Collins v. Principi,* No. 90–416) (en banc), was pending before the full Court. Disposition of the instant appeal was held until *Russell* was decided. The Secretary of Veterans Affairs (Secretary) filed a motion for summary affirmance. Summary disposition is appropriate here because the case is one "of relative simplicity" and the outcome is controlled by the Court's precedents and is "not reasonably debatable". *Frankel v. Derwinski,* 1 Vet.App. 23, 25–26 (1990).

On February 5, 1993, the Court issued a memorandum decision denying the Secretary's motion, summarily vacating the BVA decision, and remanding the record for prompt readjudication. On February 19, 1993, the Secretary filed a motion for reconsideration and panel review of the Court's decision, and for the Court to modify or vacate its decision. In his motion, the Secretary asserts that the Court's decision contained errors in (1) concluding that the appellant's claim of clear and unmistakable error implicated the application of 38 C.F.R. § 3.105(b) (1992); and (2) holding that the Board had failed to address adequately the veteran's claim. The Court agrees with the first of these contentions of error, but not the second. Therefore, the Court grants the Secretary's motion for reconsideration to the extent provided herein, withdraws its February 5, 1993, decision, and issues this decision in its place. In this new decision, the Court will again deny the Secretary's motion for summary affirmance, vacate the Board's decision, and remand the record to the Board for readjudication consistent with this decision.

## I. BACKGROUND

The veteran had active duty from September 10 to December 11, 1970. R. at 1. No defects were noted on his entrance examination. R. at 2–5. On October 19,

1970, he suffered a cerebral concussion after falling down stairs, and was hospitalized for 10 days. R. at 10–14. An October 27, 1970, "PHYSICAL PROFILE RECORD" indicates that the veteran had no physical or mental defects affecting the performance of his duties. R. at 12. On November 4, 1970, the veteran was seen by an Army physician for complaints of nervousness and vertigo. R. at 14. A November 10, 1970, psychiatric evaluation, upon referral by an Army chaplain, noted that the veteran was "very upset and anxious" and had a "tendency to paranoia", and that his "[p]rior history includes short stay in mental hospital for testing". R. at 16. On November 12, 1970, an Army psychiatrist diagnosed the veteran with "borderline schizophrenic reaction" which existed prior to service and was not aggravated by service. R. at 18. An Army medical board determined that the veteran suffered from a permanent disability due to "severe disturbance of personality and thinking", which had existed prior to service and was not aggravated by service. R. at 17. The veteran was discharged on the basis of that disability. R. at 1.

In March 1971, the RO awarded the veteran a prestabilization service-connected rating for schizophrenic reaction, at a 100% rating. R. at 32–33. (Pursuant to 38 C.F.R. § 4.28 (1992), the RO may award a "prestabilization rating" for service-connected conditions interfering with employability that have not yet become "stabilized".) The RO concluded: "Although the veteran may have been nervous before the service yet [sic] his condition greatly increased in the service and this cannot be attributed to natural progress especially in view of the fact that he fell down the stairs and suffered a brain concussion." R. at 32. In a December 1971 decision, the RO converted his prestabilization rating to a 100% schedular rating. R. at 41.

In November 1978, the RO issued a proposal to sever the veteran's service connection under 38 C.F.R. § 3.105(d). R. at 59–60. The RO stated that the March 1971 RO decision establishing service connection for schizophrenia had been based on clear and unmistakable error. R. at 60. The RO further stated:

Records reveal a history of nervous disability was noted by Medical Board proceedings and it was indicated that such was in existence prior to active service and was not aggravated thereby. Three months and three days active service provides no sound medical basis for stating that a concussion could possibly have aggravated a pre-existing schizophrenia. Also, there were no neurological symptoms to indicate any residuals of a post-concussion state and none were found on subsequent examinations during and following service. To say the veteran's well[-]established mental disorder prior to active service was aggravated by his very short period of active duty would be going beyond even the limits of speculation.

R. at 60. The veteran was informed that he had sixty days in which to respond to the proposal and that, if no response was received, the RO would terminate his benefits. R. at 58. The veteran did not respond within sixty days and, on April 2, 1979, the RO severed service connection for his schizophrenia. R. at 62.

In February 1989, the veteran submitted to the RO a request for reconsideration of the decision severing his service connection. R. at 72. In several statements in support of that claim, the veteran asserted that there was no evidence that he had been disabled due to any psychiatric disorder prior to his service, and that, therefore, the 1979 RO decision severing his service connection was unsupported by the evidence of record. R. at 72–74, 85–89, 97–100, 104–17. In a December 11, 1989, statement to the RO, the veteran's representative asserted that the 1979 RO decision was based on clear and unmistakable error, requiring revision of that decision under 38 C.F.R. § 3.105(a). R. at 100. The veteran's representative stated that "the local agency's severance action represented nothing more than difference of opinion from that [1971] rating decision which granted service connection", and that "it is inconsistent with sound principles to sever on the basis of a difference of opinion when

there is evidence of a concussion syndrome aggravating the possible preservice disability." *Ibid.*

The RO denied the veteran's claim by decisions in May 1989, August 1989, and December 1990. R. at 82, 96, 132. In its July 1991 decision, currently here on appeal, the BVA stated that the controlling inquiry was "whether undebatable prejudicial error exists in the 1979 determination that the 1971 grant of service connection for schizophrenia was erroneous." *Whitehead*, BVA 91–30010, at 4. The Board then stated:

> In the opinion of the Board, the 1979 decision was correct in determining that the 1971 decision was clearly and unmistakably erroneous. In a proposal to sever service connection dated October 1978, the rating board pointed out a number of factors which mitigated against a grant of service connection based on aggravation of a preexisting condition, including the veteran's brief period of service, the lack of neurological symptoms which would indicate residuals of a post[-]concussion state, and the fact that the military medical board proceedings had determined that the veteran's schizophrenia existed prior to service and was not aggravated by service.

*Id.* at 5.

## II. ANALYSIS

 This Court has jurisdiction to review, upon a proper and timely appeal, a BVA decision that a prior final RO or BVA decision did not contain "clear and unmistakable error" within the meaning of 38 C.F.R. § 3.105(a) (1992). *See* 38 U.S.C.A. §§ 7252, 7266(a) (West 1991); *Russell*, 3 Vet.App. at 314–15. On appeal of a BVA decision that "clear and unmistakable error" was not made in a prior final adjudication, the Court's scope of review is to determine whether that conclusion was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" and whether the Board provided an adequate statement of the reasons or bases for its determination. *Russell*, 3 Vet.App. at 315 (quoting 38 U.S.C. § 7261(a)(3)(A) (formerly § 4061)); *see* 38 U.S.C.A. § 7104(d)(1)

(West 1991); *Gilbert v. Derwinski*, 1 Vet. App. 49, 56–57 (1990).

"Clear and unmistakable error" requiring revision of a prior final RO decision exists only where it appears "undebatably" that "[e]ither the correct facts, as they were known at the time, were not before the adjudicator or the statutory or regulatory provisions extant at the time were incorrectly applied." *Russell*, 3 Vet.App. at 313. When such clear and unmistakable error is found to exist in a prior final decision, section 3.105(a) requires revision of the prior decision. *See id.* at 314. Clear and unmistakable error may not be found based on a mere "disagreement as to how the facts were weighed or evaluated." *Id.* at 313. Subparagraph (d) of section 3.105 provides that "service connection will be severed only where evidence establishes that it was clearly and unmistakably erroneous (the burden of proof being upon the Government)." These provisions were in effect in 1979 when the RO severed service connection. 38 C.F.R. § 3.105(a), (d) (1979).

In adjudicating a clear-and-unmistakable-error claim under § 3.105(a), as in adjudicating any other claim, the Board is required to provide an adequate written statement of the reasons or bases for its findings and conclusions "on all material issues of fact or law presented on the record". 38 U.S.C.A. § 7104(d)(1); *see Gilbert, supra; Russell*, 3 Vet.App. at 315. Pursuant to that requirement, the Board must explain its analysis of " 'all issues which are reasonably raised from a liberal reading' " of "all documents or oral testimony submitted prior to the BVA decision." *EF v. Derwinski*, 1 Vet.App. 324, 326 (1991) (quoting *Myers v. Derwinski*, 1 Vet.App. 127, 129 (1991)).

In the present case, the appellant, through his representative, asserted to the RO in 1989 that the 1979 rating decision severing his service connection was based on clear and unmistakable error because the RO then had wrongly applied section 3.105(d) to revise the 1971 RO decision upon a "difference of opinion" rather than upon clear and unmistakable error. R. at 100. Stated differently, the appellant's

claim is that, because the 1979 RO decision failed to identify any clear and unmistakable error in the 1971 RO decision awarding service connection, the RO in 1979 was prohibited, under section 3.105(d), from severing the veteran's service connection. As noted above, this Court, in *Russell* held that clear and unmistakable error exists only when "the correct facts as they were known at the time, were not before the adjudicator *or* the statutory or regulatory provisions extant at the time were incorrectly applied". *Russell*, 3 Vet.App. at 313 (emphasis added).

■ In discussing its determination that the 1979 RO decision was not clearly and unmistakably erroneous, the Board did not respond to the appellant's argument that the 1979 RO severance action had been based on a difference of opinion rather than on clear and unmistakable error found in the 1971 RO decision, and that, therefore, the Board in 1979 had misapplied 38 C.F.R. § 3.105(d). The Board stated that the 1979 RO decision had "pointed out a number of factors which mitigated [sic] against a grant of service connection", and that, hence, that 1979 decision did not contain clear and unmistakable error. *Whitehead*, BVA 91–30010, at 5. However, the Board's explanation fails to address the gravamen of the appellant's argument—his assertion that the 1979 RO reliance on those items of evidence to sever service connection was itself clearly and unmistakably erroneous because the 1979 RO conclusion that the evidence of record before the RO in 1971 did not support service connection expressed no more than a "difference of opinion" with the 1971 RO decision. The BVA's conclusion that the RO in 1979 had pointed to evidence which "mitigated [sic] against" a grant of service connection fails to state a basis for rejecting the claim that the RO in 1979 had failed to find expressly any clear and unmistakable error in the 1971 RO decision that would warrant severance under section 3.105(d) of the service connection awarded in that 1971 RO decision.

Because the Board failed to respond adequately to this specific claim that the 1971 RO decision contained clear and unmistakable error, the matter must be remanded for readjudication and issuance of a new decision which takes into account all of the appellant's contentions and is fully supported by an adequate statement of reasons or bases. On remand, the appellant's claim of clear and unmistakable error shall be reviewed in light of this Court's opinion in *Russell, supra.*

### III. CONCLUSION

Upon consideration of the record, the appellant's informal brief, and the Secretary's motion for summary affirmance, the Court vacates the July 1991 BVA decision and remands the record to the Board for prompt readjudication and issuance of a new decision in light of *Russell, supra,* based on all evidence and material of record and adequately supported by reasons or bases. *See* U.S.C.A. § 7104(a), (d)(1); *Fletcher v. Derwinski,* 1 Vet.App. 394, 397 (1991). On remand, the appellant will be allowed to submit additional argument. *See Quarles v. Derwinski,* 3 Vet.App. 129, 141 (1992). The Court retains jurisdiction. The Secretary shall file with the Clerk (as well as serve upon the appellant) a copy of any Board decision on remand. Within 14 days after the filing of any such final decision, the appellant shall notify the Clerk whether he desires to seek further review by the Court.

VACATED AND REMANDED.