Citation Nr: 1454757 
Decision Date: 12/12/14 Archive Date: 12/17/14

DOCKET NO. 06-34 533A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida


THE ISSUES

1. Entitlement to service connection for a prostate disorder, to include as to due to Agent Orange exposure.

2. Entitlement to service connection for a skin disorder, to include as to due to Agent Orange exposure.

3. Entitlement to service connection for residuals of a head injury, including headaches and dizziness. 


REPRESENTATION

Appellant represented by: Everett L. McKeown, Attorney


WITNESS AT HEARING ON APPEAL

The Veteran
ATTORNEY FOR THE BOARD

R. Casadei, Associate Counsel


INTRODUCTION

The Veteran served on active duty from July 1967 to April 1971.

This matter comes on appeal before the Board of Veterans' Appeals (Board) from a July 2005 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in St. Petersburg, Florida. 

This appeal was processed using the Veterans Benefits Management System (VBMS). Accordingly, any future consideration of this Veteran's case should take into consideration the existence of this electronic record. In evaluating this case, the Board has also reviewed the "Virtual VA" system to ensure a complete assessment of the evidence.

The Veteran testified before the undersigned in a November 2014 Travel Board hearing, the transcript of which is included in Virtual VA.

The Board observes that the Veteran's November 2006 VA Form 9 (substantive appeal) was originally deemed by the RO to have been untimely and invalid. The RO notified the Veteran of this determination in December 2006. However, in a subsequent statement dated in January 2007, the Veteran explained that he was unable to file his VA Form 9 in a timely matter as he had been hospitalized due to a quadruple bypass surgery and subsequent recovery. In a May 2014 handwritten note on the Veteran's January 2007 statement, a Decision Review Officer noted that the Veteran's statement was being accepted as a timely VA Form 9. Under these circumstances, the Board shall not disturb the RO's acceptance of the VA Form 9 as timely. See Percy v. Shinseki, 23 Vet. App. 37, 44-46 (2009) (holding that the filing of a substantive appeal is not a jurisdictional requirement and the timeliness requirement may be waived where the RO's actions indicate an appeal is perfected). Accordingly, the issues listed on the title page are properly before the Board for consideration. 

The appeal is REMANDED to the RO via the Appeals Management Center (AMC), in Washington, DC. VA will notify the appellant if further action is required.


REMAND

The record as it stands is currently inadequate for the purpose of rendering a fully informed decision as to the claims on appeal. Where the record before the Board is inadequate to render a fully informed decision, a remand to the RO is required in order for VA to fulfill its statutory duty to assist the Veteran to develop the facts pertinent to the claim. Ascherl v. Brown, 4 Vet. App. 371, 377 (1993). 

Prostate Disorder

The Veteran's post-service VA and private treatment records reflect that the Veteran has been noted to have an enlarged prostate and elevated Prostate-Specific Antigens (PSAs) and has been diagnosed with Benign Hypertrophy Prostate (BHP) and Benign Prostatic Hyperplasia. See treatment notes from Watson Clinic LLP dated August 2002, August 2004, and August 2011; see also VA treatment record dated January 2005 in Virtual VA. 

The Veteran has also been found to have been exposed to Agent Orange during service. See June 2014 RO rating decision (conceding that the Veteran set foot in Vietnam). The Veteran does not contend, and the medical evidence does not otherwise reflect that he has a current diagnosis of prostate cancer; however, the Veteran maintains that his exposure to Agent Orange caused the currently diagnosed prostate disorders. The Veteran has not been afforded a VA examination; as such, the Board finds that one is necessary in order to assist in determining whether any of the Veteran's prostate disorders are etiologically related to service, to include exposure to Agent Orange. See Combee v. Brown, 34 F.3d 1039 (Fed. Cir. 1994) (holding that a veteran is not precluded from establishing service connection with proof of actual direct causation).

Skin Disorder

VA treatment records (in Virtual VA dated 6/12/14) reflect that the Veteran has been diagnosed with, and treated for, various skin disorders. In a January 2005 VA treatment note, the Veteran's active problems list included a notation of skin cancer. See also December 2006 VA treatment note (noting skin cancer and actinic changes to face). In a December 2008 VA treatment record, the Veteran was seen for several skin lesions and a chronic cyst of the upper back. In June 2009, a VA physician noted a two centimeter cyst on the Veteran's back and several keratotic lesions on the face. In an August 2010 VA treatment note, the Veteran was noted to have "skin cancer Squamous Cell; Dysplastic Nevus" and was also prescribed cream and shampoo for a fungal infection of the skin. A January 2011 active problem list noted that the Veteran had malignant neoplasm of the skin. 

As noted above, the Veteran has been found to have been exposed to Agent Orange during service. See June 2014 RO rating decision. During the November 2014 Board Hearing, the Veteran testified that his skin disorders occurred when he went onshore in Vietnam during service. See November 2014 Board Hearing Transcript at pg. 3. The Veteran testified that his skin disorder, described as discoloration or a fungal condition, has persisted since service. The Veteran has not been afforded a VA examination regarding his claim for service connection for a skin disorder. Accordingly, the Board finds that a VA examination is warranted in order to assist in determining whether any diagnosed skin disorder was in incurred in or is otherwise related to service, to include exposure to Agent Orange. 

Residuals of Head Trauma

Service treatment records in September 1967 reflect that the Veteran was treated for a two inch laceration of the right upper occipital scalp, which required eight sutures. The sutures were removed five days later without any noted complication. 
During the November 2014 Board hearing, the Veteran testified that he suffered a head injury, resulting in a laceration of the scalp. He further stated that, since the in-service injury, he has experienced occasional headaches and dizziness. See Board Hearing Transcript at pg. 5. The Board finds that headache pain and dizziness are symptoms that the Veteran is competent, as a lay person, to describe.
See Charles v. Principi, 16 Vet. App. 370, 374-75 (2002) (the Court has held that a veteran is competent to describe symptoms of which he or she has first-hand knowledge). 

The Veteran has not been afforded a VA examination regarding his claim for residuals of a head injury, to include headaches and dizziness. Accordingly, the Board finds that a VA examination is warranted in order to assist in determining whether any diagnosed disorder was in incurred in or is otherwise related to service, to include the in-service scalp injury. 
There is no further evidence laceration
Accordingly, the case is REMANDED for the following actions:

1. The RO/AMC should obtain any outstanding VA treatment records, and should associate them with the claims file. 

2. Then, schedule the Veteran for an appropriate VA examination to assist in determining the nature and etiology of his prostate disorder. The evidence of record and a copy of this remand must be made available to and reviewed by the examiner prior to completion of the examination. All necessary testing should be conducted. The examiner is asked to address the following:

(a) Provide a diagnosis for all prostate disorders.

(b) For each prostate disorder identified, state whether it is at least as likely as not (i.e., probability of 50 percent or greater) that the Veteran's prostate disorder had its onset during active service or is related to any in-service disease, event, or injury, to include in-service herbicide exposure. (Note: Agent Orange exposure has been conceded).

3. Schedule the Veteran for a VA skin examination to assist in determining the nature and etiology of his skin disorder. The claims folder and a copy of this remand must be made available to and reviewed by the examiner prior to completion of the examination. All necessary testing should be conducted and all appropriate diagnoses rendered. The examiner is asked to address the following: 

(a) Provide a diagnosis for all skin disorders.

(b) For each skin disorder identified, state whether it is at least as likely as not (i.e., probability of 50 percent or greater) that the Veteran's skin disorder had its onset during active service or is related to any in-service disease, event, or injury, to include in-service herbicide exposure. (Note: Agent Orange exposure has been conceded). 

4. Schedule the Veteran for an appropriate VA examination to assist in determining the nature and etiology of any residual disorders resulting from the in-service scalp injury. The evidence of record and a copy of this remand must be made available to and reviewed by the examiner prior to completion of the examination. The examination report should reflect that such review has been accomplished. All necessary testing should be conducted. The examiner is asked to address the following:

(a) Provide a diagnosis for any head or neurological disorder, to include headaches and dizziness.

(b) For each disorder identified, state whether it is at least as likely as not (i.e., probability of 50 percent or greater) that the Veteran's disorder(s) had its onset during active service or is related to any in-service disease, event, or injury, to include the in-service scalp injury in September 1967.

All examination findings, along with rationale for all opinions expressed, should be set forth in the examination report.

5. Thereafter, the RO/AMC should readjudicate the claims based upon all additional evidence received. If the benefits sought on appeal are not granted, the Veteran and his representative should be furnished with a Supplemental Statement of the Case and afforded an opportunity to respond before the file is returned to the Board for further appellate consideration.

The Veteran has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).




______________________________________________
K. J. ALIBRANDO
Veterans Law Judge, Board of Veterans' Appeals